UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DENNIS R. OTT,

Defendant.

_____/

Case No. 18-cv-12174

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

# OPINION AND ORDER ON FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. INTRODUCTION

On July 12, 2018, Plaintiff United States of America filed the instant action against Defendant Dennis Ott ("Ott"). ECF No. 1. The United States seeks to collect civil penalties for Ott's failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") for the years 2007, 2008, and 2009. Specifically, the United States alleges that Defendant's failure to file an FBAR was willful for the years in question. While Defendant concedes that he did not file an FBAR during these years, he argues that his failure was merely negligent and did not rise to the level of willfulness. This Court conducted a bench trial on October 29, 2019 and October 30, 2019.

## II. FINDINGS OF FACT

Ott is a United States citizen.  He is 56 years old and resides in Redford, Michigan with his wife, Tracey Ott.  During trial, Ott testified that he received a high school diploma and has some college education, but he did not finish college.

Ott has worked as a carpenter, sales agent, and the owner and operator of a small business that rents curtains and staging called Show Supplies LLC.

Ott has no training in tax or accounting.

In 1993, Defendant opened two brokerage accounts with McDermid St. Lawrence Ltd. ("McDermid"), a Canadian financial institution, and deposited $50,000 into those accounts.

In 1994, Ott's Canadian financial advisor, Donna Balaski ("Balaski"), moved brokerage firms from McDermid to Thomson Kernaghan & Co. Ltd. ("Thomson"), a Canadian financial institution.  Following his broker, Ott closed his accounts with McDermid and transferred the contents of those accounts into the Thomson accounts.

Between 1993 and 1998, Defendant made additional deposits into the foreign accounts. The additional deposits totaled $71,478.

Balaski moved her employment again to Desjardins Securities ("Desjardins"), a Canadian financial institution.  On May 2, 2002, Defendant subsequently

transferred the contents of his accounts with Thomson to Desjardins, following Balaski.

On or about July 3, 2003, Ott opened two bank accounts with TD Canada Trust, a Canadian financial institution.

On July 1, 2006, Ott opened two financial accounts with Octagon Capital Corporation ("Octagon") in Toronto, Ontario, with account numbers ending in 589-E and 589-F (the "Canadian Accounts"), and transferred the contents of the accounts with Desjardins to the Octagon accounts.

Ott has a sister with a Canadian home address.  Soon after the Octagon accounts were opened, Ott listed his sister's home address for receipt of mailings and correspondence from the Octagon firm.  At all relevant times, the address associated with the Canadian Accounts was Ott's sister's Canadian address.

Octagon sent mail to the address listed on Ott's account, his sister's Canadian address, which included information regarding potential income tax obligations with respect to the Octagon accounts.

With rare exception, Ott's sister did not transmit mailings from the Octagon firm to Ott.

Ott had regular contact with his securities broker at Octagon throughout the years 2007 to 2009.

During the 2007, 2008, and 2009 calendar years, the balance of the Canadian Accounts exceeded $10,000.

The highest aggregate balance of the Canadian Accounts in 2007 was $1,903,477.  The highest aggregate balance of the Canadian Accounts in 2008 was at least $770,000.  The highest aggregate balance of the Canadian Accounts in 2009 was $1,766,129.

Robert C. Weide ("Weide"), Certified Public Accountant (CPA), has been Ott's accountant for many years and prepared his tax returns during the years at issue.

Weide prepared Ott's federal tax returns using software licensed by his firm and then transmitted the returns back to him for review and approval.

Weide prepared Ott's returns based on the materials provided to him by the Otts.

Ott declared on his 2007 tax return that his income was $21,381.

Prior to causing each federal income tax return to be filed, Ott signed his returns, which included the following language: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

For each year, the instructions to IRS Form 1040 Schedule B provided that persons who had a foreign account were required to complete Part III of Schedule B to Form 1040, entitled "Foreign Accounts and Trusts."

For each year, Part III of Schedule B to IRS Form 1040, entitled "Foreign Accounts and Trusts," asked the filer if he had a financial interest in, or signature authority over, a financial account in a foreign country. The form and instructions also directed the filer to Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (the "FBAR") and its instructions.

The FBAR is a separate information return that discloses a United States citizen's interest in a foreign account which holds in excess of $10,000 per year.

Ott testified that he never reviewed the instructions to IRS Form 1040 Schedule B.

Ott did not file an FBAR reporting the Canadian Accounts for the 2007 calendar year on or before June 30, 2008.  Ott did not file an FBAR reporting the Canadian Accounts for the 2008 calendar year on or before June 30, 2009.  Ott did not file an FBAR reporting the Canadian Accounts for the 2009 calendar year on or before June 30, 2010.  Ott timely filed FBARs for the 2010 year.

In the preparation of the tax returns for the years at issue, Weide did not affirmatively check the "No" box on the Schedule B regarding Ott's ownership in

foreign accounts.  Instead, the accounting software Weide used defaulted to check the "No" box on Schedule B.

Prior to October 2010, Ott did not ask Weide if he was required to report the income from his Canadian Accounts on his tax returns.

In June 2010, Ott transferred the contents of the Canadian Accounts to Global Maxfin Capital, Inc., a Canadian banking institution.  Upon this transfer and liquidation of the Accounts, Ott disclosed the existence of the Canadian Accounts to his accountant, Weide.

Weide referred Ott to G. Michelle Ferreira ("Ferreira"), a tax attorney.

In 2011, Ferreira recommended that Ott disclose the existence of their foreign accounts to the IRS as part of the IRS's Offshore Voluntary Disclosure Initiative ("OVDI").

As required in the OVDI, Weide prepared amended returns that reported Ott's income from the Canadian Accounts for all relevant years.

As was required in the OVDI, Ott (a) voluntarily provided the IRS with copies of his original and amended income tax returns, (b) voluntarily provided the IRS with his statements for the Canadian Accounts, (c) voluntarily provided the IRS with his FBARs, and (d) voluntarily paid the additional income tax due.

Soon after, the IRS published Frequently Asked Questions on the IRS's website advising U.S. taxpayers who were participants in the 2011 OVDI that they

should withdraw (i.e., Opt-Out) from the OVDI if the penalties those taxpayers would face under Title 26 and Title 31 statutes would be less (because their conduct was less than willful) than penalties taxpayers would pay in the OVDI. The IRS's Opt-Out procedures were intended, according to the IRS, for taxpayers who did not willfully fail to file FBARs and report their income on their foreign accounts.

On June 1, 2011, Deputy Commissioner for Services and Enforcement, Steven Miller, published a Memorandum entitled "Guidance for Opt-Out and Removal of Taxpayers from the Civil Settlement Structure of the 2009 Offshore Voluntary Disclosure Program (2009 OVDP) and the 2011 Offshore Voluntary Disclosure Initiative (2011 OVDI)."

Miller's Opt-Out Memorandum was published on the IRS's website and was touted as a way for non-willful taxpayers to not be subject to the "one size fits all" penalty regime of the 2011 OVDI.

Based on discussions with Ferreira and the information on the IRS website, Ott followed the procedures outlined in the Miller Memorandum to formally opt out of the 2011 OVDI, which included the preparation of a required statement that outlined Ott's reasonable cause defenses to the FBAR penalties.

After Ott withdrew from the OVDI, the IRS audited Ott's income tax returns and FBARs for 2003 through 2009. At the conclusion of the audit, the IRS issued a Notice of Deficiency with deficiencies to income tax and civil fraud penalties for the

years 2007, 2008 and 2009, all related to the voluntary disclosures for the foreign accounts.

In February 2015, Ott petitioned the IRS's assertion of income tax and civil fraud penalties to the U.S. Tax Court.  Settlement documents were filed in the Tax Court in June 2018 and Ott paid penalties in June 2019.

Separate from the U.S. Tax Court case, the IRS assessed further penalties against Ott for willful failure to report the Canadian Accounts on an FBAR for 2007, 2008, and 2009.

Specifically, on August 26, 2016, the IRS assessed a total civil penalty of $988,245 against Ott for willful failure to report the Canadian Accounts on an FBAR for the years in question.  On the same date, a delegate of the Secretary of the Treasury provided Ott with notice of the FBAR assessments against him and demanded payment thereof.

### III. CONCLUSIONS OF LAW

The core issue in this case is whether Dennis Ott willfully failed to file an FBAR that reported his foreign Canadian accounts for the years 2007, 2008, and 2009.  The Government contends that Ott had constructive knowledge of his reporting requirements by signing his tax returns, which included a reference to the FBAR within the Schedule B form.  The Government also argues that naming Ott's sister's Canadian address on the accounts was an act of concealment.  Finally, the

Government contends that the foreign account balances represented an overwhelming proportion of Ott's total income, all demonstrating that he recklessly, and therefore willfully, failed to file FBARs for the years in question.  Defendant asserts that his signature on his tax returns, along with the absence of any deliberate acts of concealment, does not amount to a willful failure to file the FBARs, and that he is at most negligent.

### A. The Government's Burden of Proof

The Government seeks to collect willful penalties against Ott under 31 U.S.C. § 5321.  Generally, suits to recover a monetary penalty require the government to prove its case by a preponderance of the evidence.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983); *United States v. McBride*, 908 F. Supp. 2d 1186, 1202 (D. Utah 2012).  This standard of proof has been consistently applied in civil cases involving failures to report FBARs.  *See, e.g., United States v. Garrity*, 304 F. Supp. 3d 267, 270 (D. Conn. 2018) (". . . every court that has answered the question before me has held that the preponderance of the evidence standard governs suits by the government to recover civil FBAR penalties.") (citing *Bedrosian v. United States*, No. CV 15-5853, 2017 WL 3887520, at *1 (E.D. Pa. Sept. 5, 2017)) (additional citations omitted).  The government, therefore, bears the burden to prove Ott willfully failed to file FBARs for 2007, 2008, and 2009 by a preponderance of the evidence.

### B. Willfulness Definition for Civil Tax Liability

As an initial matter, courts treat the willfulness analysis for failure to comply with a tax reporting requirement as a question of fact. *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012) (citing *Rykoff v. United States*, 40 F.3d 305, 307 (9th Cir.1994)).

There is a disagreement between the parties as to the definition of willfulness in this context. District courts have recently observed that "only three federal courts . . . have engaged in a thorough analysis of the precise contours of the term 'willful' as used in Section 5321." *U.S. v. Horowitz*, 361 F. Supp. 3d 511, 527 (D. Md. Jan. 18, 2019) (citing *Bedrosian v. United States*, No. 15-5853, 2017 WL 1361535, at *4 (E.D. Pa. Apr. 13, 2017)).[1]  In civil cases involving failure to file an FBAR, courts define willful conduct to include either recklessness or willful blindness.  Each standard is discussed in turn below.

The Supreme Court has distinguished between civil and criminal recklessness, holding that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  Willful action

---

[1] The *Bedrosian* court was referring to a Fourth Circuit case (*Williams*), a Utah District Court case (*McBride*), and a California District Court case (*Bohanec*).  *See United States v. Williams*, 489 Fed. App'x 655 (4th Cir. 2012); *United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah 2012); *United States v. Bohanec*, 263 F. Supp. 3d 881 (C.D. Cal. 2016).

includes "conduct marked by careless disregard whether or not one has the right so to act." *Id.* (citing *United States v. Murdock*, 290 U.S. 389, 395 (1933)) (internal citations omitted). Civil recklessness is analyzed under an objective standard, with conduct "entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). This is distinguishable from criminal recklessness, which "requires subjective knowledge on the part of the offender." *Id.* at n.18. A taxpayer may act recklessly in regard to IRS filing requirements when he "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he was in a position to find out for certain very easily." *Bedrosian v. United States of Am., Dep't of the Treasury, Internal Revenue Serv.*, 912 F.3d 144, 153 (3d Cir. 2018) (internal citations omitted) (internal quotations omitted).

In addition to recklessness, the parties note that courts in other Circuits have applied a "willful blindness" theory in determining whether a taxpayer willfully failed to file an FBAR.[2] There is no clear consensus about the willful blindness

---

[2] Notably, the definition of "willful blindness" varies depending on the type of litigation. *See, e.g., Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011) (holding that for patent infringement civil lawsuits under 35 U.S.C. § 271(b), the willful blindness standard embraces the definition in criminal law, where it can almost be said that the defendant has *actual knowledge* of the wrongdoing) (emphasis added); *U.S. v. Poole*, 640 F.3d 114, 122 (4th Cir. 2011) (finding willful blindness in a criminal tax prosecution when a defendant "was subjectively aware of a high probability of the existence of a tax liability and purposely avoided learning the facts pointing to such liability . . ."); *In re Aimster*

definition in civil tax liability suits. Defendant points to a two-part test for willful blindness in the criminal context, which considers whether (1) a person was subjectively aware of a high probability of the existence of a tax liability, and (2) purposefully avoided learning the facts that point to such liability. *Poole*, 640 F.3d at 122 (affirming criminal conviction for willful tax fraud). This test was adopted by the Supreme Court in the specific context of induced patent infringement cases. *Glob.-Tech Appliances, Inc.*, 563 U.S. at 768 (finding that willful blindness surpasses recklessness and negligence standards under 35 U.S.C. § 271(b)). The Government notes, however, that a recent decision from a sister district court analyzed this issue and determined that willful blindness "is also a form of recklessness," categorizing willful blindness as a subcategory within the recklessness standard generally. *United States v. Flume*, 390 F. Supp. 3d 847, 854 (S.D. Tex. June 11, 2019). Given the present legal landscape, this Court finds that willful blindness may be proven by objective recklessness in the civil FBAR context.

### C. Proving Willfulness Through Inference

In the objective willfulness inquiry, a court may consider "circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available." *McBride*, 908 F. Supp. 2d at 1205 (citing

---

*Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) (holding that "willful blindness is knowledge, in copyright law . . .").

*United States v. Sturman*, 951 F. 2d 1466, 1476-77 (6th Cir. 1991)).  This includes drawing inferences through "conduct meant to conceal or mislead sources of income or other financial information."  *Id.*  Under this inferential assessment, the Court considers the relevant case law and facts under the totality of the circumstances.

### 1.  Ott Had Constructive Knowledge of His FBAR Reporting Requirements by Signing His Federal Tax Returns, Supporting a Finding of Willfulness

Generally, a taxpayer who signs his or her tax returns "will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents."  *Greer v. Comm'r*, 595 F.3d 338, 347 n.4 (6th Cir. 2010) (internal citations omitted).  The Sixth Circuit held that "[i]t is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms," including the Schedule B language referring the taxpayer to FBAR filing requirements.  *U.S. v. Sturman*, 951 F. 2d 1466, 1477 (6th Cir. 1991).  The Sixth Circuit also found that in the criminal context, the mere signing of a return does not prove subjective knowledge, and therefore willful blindness, of the FBAR filing requirement.  *U.S. v. Mohney*, 949 F. 2d 1397, 1407 (6th Cir. 1991).  This burden is met in civil cases, however, if the defendant's conduct and failure to report meets an objective recklessness standard.  *Safeco Ins.*, 551 U.S. at 57.

Here, the Defendant stated in both his deposition and trial testimony that he did not review the substance of his tax returns beyond "the bottom line," meaning "what [he] owed or received back" for each year in question.   ECF No. 45, PageID.550-555.   Ott further testified that no interest, dividends, or capital gains from the foreign Canadian accounts were reflected in his tax returns during this time. *Id*. at PageID.554-555.   In *Mohney*, the Sixth Circuit upheld the defendant's conviction for willfully filing false returns, affirming that a taxpayer's "signature is *prima facie* evidence that the signer knows the contents of the return."   949 F. 2d at 1407 (finding that "knowledge may be inferred from the signature along with the surrounding facts and circumstances . . .").

A sister district court undertook a thorough analysis of the constructive knowledge doctrine, agreeing with the Sixth Circuit and refusing "to excuse [the defendant's] liability and knowledge of a plainly evident duty because he failed to read what he was signing." *McBride*, 908 F. Supp. 2d at 1207 (D. Utah 2012).   Given that McBride was not shielded from liability for failure to read the content of his tax returns, Ott should not be able to claim protection here under that same argument. Ott signed a return each year, under penalty of perjury—regardless of whether he actually read the return—certifying that he did not have an interest in foreign accounts.   Accordingly, constructive knowledge of the requirement to file the FBAR is imputed to Ott, supporting a finding of willfulness here.   *See id*. at 1208.

## 2. Ott Acted Recklessly, and Therefore Willfully, Towards His Reporting Obligations by Not Informing His Accountant of the Foreign Accounts

Willfulness may be found "if the individual recklessly ignores the risk that conduct is illegal by failing to investigate whether the conduct is legal." *McBride*, 908 F. Supp. 2d at 1209. "Taxpayers have long been cautioned that they have a responsibility to investigate claims when they are likely too good to be true." *Id*. (citing *Pasternak v. Comm'r*, 990 F. 2d 893, 903 (6th Cir. 1993)) (internal quotations omitted). A taxpayer recklessly abdicates that responsibility, for example, when he fails to consult with his accountant about foreign account reporting requirements. *See, e.g., McBride* 908 F. Supp. 2d at 1210; *Sorenson v. United States*, 521 F.2d 325, 329 (9th Cir. 1975); *Horowitz*, 361 F. Supp. 3d at 513.

Here, the Defendant has consistently stated that he is not a tax expert with any financial or legal training in tax accounting. *See, e.g.*, ECF No. 44, PageID.417; ECF No. 47, PageID.712. Nevertheless, he chose to rely solely on advice he received decades ago concerning foreign investments:

> His mistaken understanding was due to advice he received from a return preparer when he was a young adult that he could defer tax liability by reinvesting the dividends he earned on stock. He also mistakenly believed that, so long as he did not take out more money than his original investment, he would not be required to recognize gain on the account until the Canadian account was liquidated.
>
> Ott's Post-Trial Response Brief, ECF No. 47, PageID.717-718.

In *Horowitz*, the husband and wife testified that, based on conversations with friends, they did not believe they had to pay taxes on money earned overseas in Saudi Arabia. F. Supp. 3d at 525. Importantly, the defendants argued that willful penalties were unwarranted, as their "accountants neither asked about overseas bank accounts nor explained the FBAR or the question about foreign accounts on Form 1040, Schedule B, which they completed on the Horowitzes' behalf." *Id*. The district court still held, however, that willfulness could be inferred based on their blind reliance on friends' advice and failure to consult with their accountants. *Id*. at 529.

The *Horowitz* case is instructive in this analysis. Similar to the Horowitzes, Ott argues that his mistaken reliance on incorrect advice proves that he was at most negligent, not willful. The evidence presented in this case, however, supports an inference of reckless conduct. The Defendant's failure to discuss his foreign investments with his long-time accountant Weide, for example, indicates "a conscious effort to avoid learning about reporting requirements." *Id*. at 529 (citing *U.S. v. Williams*, 489 Fed. Appx. 655, 658 (4th Cir. 2012)). Ott's lack of experience in tax accounting suggests that he knew, or should have known, that relying solely on advice he received as a young adult, without consulting his accountant, was reckless conduct in disregard of potential reporting requirements. At the very least, Ott's failure to disclose hundreds of thousands of dollars in a foreign Canadian account to his tax preparer demonstrates that he should have known there was a risk

of noncompliance, and yet he failed to take any investigative or corrective action. *McBride*, 908 F. Supp. 2d at 1209.  Therefore, Ott's claim that he relied on his own beliefs as to his legal reporting obligations, without verifying those beliefs with his long-time tax preparer, supports a finding of recklessness here.

### 3.  Ott Listing His Sister's Canadian Address for the Foreign Accounts' Mailing Address was an Act of Concealment Demonstrating Willfulness

Additionally, "[e]vidence of acts to conceal income and financial information, combined with the defendant's failure to pursue knowledge of further reporting requirements as suggested on Schedule B, provide a sufficient basis to establish willfulness on the part of the defendant." *Sturman*, 951 F. 2d at 1477.  These acts of concealment range in severity in the FBAR context, from creating "numbered" bank accounts to avoid detection, *Kimble v. United States*, 141 Fed. Cl. 373, 384 (2018), to creating shell corporations, *McBride*, 908 F. Supp. 2d at 1189.

This Court first notes that Ott is far from the sophisticated financial masterminds that opened foreign accounts in multiple countries or manufactured complex shell corporations to evade U.S. tax regulations.  But a lack of sophisticated business dealings or specialized tax knowledge does not preclude a finding of willfulness when acts of concealment are present.

Here, instead of receiving the mail associated with his foreign accounts at his Michigan address, Ott provided the bank with his sister's Canadian address.  During

the 2011 Offshore Voluntary Disclosure Program process, Ott stated under penalty of perjury that: ". . . I opened a bank account at TD Canada Trust . . . I used my name and address but also used my sister's address in Toronto for ease of mailing statements."  Gov't Trial Ex. 3, Page 5.  During his trial testimony, however, Ott stated that he had no part in the address change and his broker, by herself, changed the mailing address to Ott's sister's address in Canada.  ECF No. 44, PageID.439.

Considering the eight-year difference between Ott's conflicting statements as well as the arguments during trial, the Court finds it improbable and lacking in credibility that the Defendant took no part in changing his mailing address to a foreign Canadian address.  Using an address that matched the country of the foreign bank accounts suggests that Ott sought to avoid the detection of his account ownership.  Further, sending everything to his sister allowed Ott to avoid seeing any statements concerning reporting responsibilities, including the language: "These transactions are to be reported on your annual return of income."  ECF No. 44, PageID.459.  This failure to review any of the mail sent to his sister from the brokerages constitutes an act of concealment and "conduct marked by careless disregard whether or not one has the right so to act," therefore meeting the civil recklessness standard.  *Safeco Ins.*, 551 U.S. at 57.

> **4.  Ott Acted Recklessly, and Therefore Willfully, Because He Kept Continuous Contact with His Broker Regarding the Foreign Accounts, Regularly Checked the Account Balance Online, and**

**the Account Balance was Significantly Disproportionate to Ott's Claimed Income**

Finally, numerous remaining facts in the record also signify that the Defendant acted with reckless disregard to his FBAR reporting requirements.  First, Ott stated in his 2011 Offshore Voluntary Disclosure Program document that he spoke with his broker frequently, "speaking twice weekly by phone and sometimes more" starting around 2007.  Gov't Trial Ex. 3, Page 5.  This constant contact demonstrates an acute awareness of the accounts' existence and far exceeds the communication in *Horowitz*, where the husband monitored the account in question "by calling the bank every year or two."  361 F. Supp. 3d at 516.

Second, Ott consistently monitored his foreign account balances online during the years in question.  He testified that he looked at the account statements online "maybe monthly" so that he "could see the value of my account."  ECF No. 44, PageID.458, 460.  In other words, Ott had online access to monitor his accounts with balances at or exceeding a million dollars at their highest aggregate points.  This is in stark contrast to the income amounts Ott provided on his tax returns, which ranged between twenty and forty thousand dollars for the years in question.  *See* Gov't Trial Ex. 13-15.  The amounts on Ott's tax returns are significantly disproportionate to the foreign accounts' million-dollar balances.  Further, bank records and Ott's answers to the Government's interrogatories indicate that in-person cash withdrawals and numerous checks were written on the Canadian accounts.  *See* Gov't Ex. 28, Page 1,

Gov't Ex. 44, Page 5. These amounts totaled thousands of dollars in withdrawals and checks. *Id.* At trial, the Defendant was largely unable to remember when those withdrawals occurred or what the money was spent on. ECF No. 44, PageID.515. This Court agrees with the Government that it is neither credible nor believable that Ott, who claimed an income level near the poverty line, would be unable to recall taking out thousands of dollars from his Canadian accounts.

These factors, coupled with the discussion above, demonstrate that Ott "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and [that] (3) he was in a position to find out for certain very easily." *Bedrosian*, 912 F.3d at 153. Ott's failure to review his tax returns, his decision not to ask his tax preparer about foreign account reporting obligations, his decision to send his mail to a Canadian address, and his knowledge of almost—or more than—a million dollars in account balances for the years in question all indicate that the Defendant acted with reckless disregard to his reporting requirements. The Government has met its burden by a preponderance of the evidence that Ott acted recklessly and with willful blindness by failing to report his foreign accounts. This Court therefore finds that Ott willfully failed to timely file FBARs for 2007, 2008, and 2009 under 31 U.S.C. § 5321.

## IV. CONCLUSION

Accordingly, judgment will be entered in favor of Plaintiff, the United States

of America, and against Defendant Dennis R. Ott, in the amount of $988,245 for the

FBAR penalties assessed against him for the calendar years 2007, 2008, and 2009.

**IT IS SO ORDERED.**


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2020


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 26, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager